### No. 23,497.

## The Union National Bank of Wichita, *Appellee*, v. J. P. Ternes and Mary Ternes, *Appellants*.

#### SYLLABUS BY THE COURT.

1. Creditor's Bill—*Prerequisites to Right to Maintain a Creditor's Bill.* It is a prerequisite to the maintenance of a creditor's bill, in which it is asked that transfers of real estate be set aside as fraudulent and the property transferred be subjected to the payment of the plaintiff's debt, that he shall have reduced his debt to judgment; and it is ordinarily necessary for him to show that execution has been returned unsatisfied or that the remedies afforded by law have been exhausted.

2. Same. The proofs offered by plaintiff are examined and held to have been insufficient to entitle the plaintiff to the equitable remedy sought.

Appeal from Sedgwick district court, division No. 1; Thomas E. Elcock, judge. Opinion filed February 11, 1922. Reversed.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellants.

*George Gardner,* and *K. W. Pringle,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This was an action in the nature of a creditor's bill to subject a tract of land to the payment of a judgment which plaintiff had obtained against the defendant, and the judgment being against the defendants, they appeal.

It is contended that the petition failed to state a cause of action and that the proof offered under it did not warrant the judgment that was rendered. In the petition it was alleged that on October 14, 1919, plaintiff recovered a judgment against J. P. Ternes for $2,872.12 and that the judgment is wholly unpaid. That was followed by an averment that on June 25, 1918, while J. P. Ternes was indebted to plaintiff he transferred the tract in question to his wife, the consideration being $1 and love and affection; that the transfer was made with the intent to defraud the plaintiff and hinder and delay it in the collection of the amount owing by him to plaintiff and in the enforcement of the judgment subsequently rendered; and further, that his wife received the deed knowing of the defendant's indebtedness, and that it was without consideration. It will be observed that the transfer challenged was made more than fifteen months before the pleaded judgment was rendered. The petition contained no allegation that Ternes did not have real or personal property sufficient to satisfy that judgment, nor yet that exe-

cution had been issued and returned.unsatisfied, and there was no allegation that he was insolvent. Allegations of some of these facts are deemed to be necessary to the maintenance of the remedy sought by plaintiff. There was the same sparsity in the proof that was offered in support of the petition as in the petition itself. The judgment pleaded was not introduced in evidence and we can find no admission or proof in the case of its existence. There was no proof of the issuance of an execution or anything showing that the judgment could not be enforced by the ordinary legal remedies. In the testimony of defendant Ternes, he did state that the conveyance made to his wife in June, 1918, was a transfer of all the property then owned by him. It further appears that after the time of the transfer he paid plaintiff one note of $1,700 and over $2,000 upon another note. He testified that the transfer was not made with intent to defraud plaintiff and stated that his wife had inherited $1,400˙ which he borrowed and put into the land; that she had helped him accumulate the property by raising chickens, selling eggs and also milk and butter, all of which she had turned over to him during all of the twenty-seven years of their married life, and that from this money, and other sums earned by him, they had bought one property after another, and that the property was conveyed to her as a payment of his obligations to her.

However, the court may have discredited some or all of that testimony. The only question then is, Was there proof sufficient to uphold the judgment setting aside the transfer and subjecting the property to the payment of the judgment alleged to have been rendered on June 25, 1918? To maintain the action it was necessary for plaintiff to show a subsisting judgment. This was not done, and it has been held that this is a necessary prerequisite to sustain the action. (*Tennent v. Battey,* 18 Kan. 324; *Harrison v. Shaffer,* 60 Kan. 176, 55 Pac. 881; *Breitkreutz v. Bank,* 70 Kan. 698, 79 Pac. 686.) The existence of the judgment may have been taken for granted by counsel and in that way escaped the attention of the court. If the rendition of the judgment in 1918 had been admitted it would still have been necessary for the plaintiff to have shown that it was unsatisfied in 1920 when the action was brought. In an equitable action of this character it is ordinarily deemed to be necessary to show that legal remedies have been exhausted, and that is usually done by allegation and proof that an execution has been issued and returned unsatisfied. It has been urged that an is-

suance of an execution which has been returned unsatisfied is not required where it would be a useless act. A showing of insolvency is held by some courts to excuse the issuance and return of an execution, and the complete exhaustion of legal remedies. But this court has said that the doctrine of *Tennent v. Battey,* supra, is, "That the best evidence of the judgment debtor's insolvency is that evidenced by the issuance and return of an execution unsatisfied." (See *Bank v. Lemley,* 105 Kan.15, 18, 180 Pac. 238, 181 Pac. 606.)

In *Bank v. Chatten,* 59 Kan. 303, 52 Pac. 893, there is a quotation of a decision of Chancellor Kent in which he said: "'The creditor must have completed his title at law, by judgment and execution, before he can question the disposition of the debtor's property,'" (p. 305) and following this it was remarked that this has been recognized as the law from that time to the present day. (See, also, *Parmenter v. Lomax,* 68 Kan. 61, 74 Pac. 634; *Moyer v. Riggs,* 8 Kan. App. 234.) The pleading and proof were insufficient under the rules applied by any of the courts to actions of this character. Here insolvency was not alleged, and the closest approach to proof on that subject was the statement of Ternes already noticed that on June 25, 1918, when the transfer was made it included all of his property. There was no averment that he had not since acquired other property sufficient to pay the judgment, and, as we have seen, the transfer was made long before the pleaded judgment was rendered. The averments of the petition, as we have seen, were scanty in failing to allege that an execution had been returned *nulla bona* or that the judgment debtor was without means to satisfy the judgment, and in failing to allege that the judgment was still unpaid. The proof was more scant in failing to prove that the pleaded judgment had been rendered and was still in existence or that the efforts to enforce it had been fruitless, or that all legal remedies had been exhausted before resorting to this equitable remedy, or that the debtor was without property to satisfy it.

For these defects and omissions the judgment of the trial court must be reversed and the case remanded for a new trial.